**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>CAESARS ENTERTAINMENT<br>OPERATING COMPANY, INC., *et al.*,<br><br>             Debtors. | No. 18-mc-_____<br><br>Action pending in United States<br>Bankruptcy Court for the Northern<br>District of Illinois, Chapter 11 Case<br>No. 15-01145-ABG |
| EARL OF SANDWICH (ATLANTIC CITY),<br>LLC,<br><br>             Movant,<br><br>    - against -<br><br>COWEN SPECIAL INVESTMENTS,<br>LLC and BRADLY SCHWAB,<br>             Respondents. | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION
## TO COMPEL PRODUCTION OF DOCUMENTS

Dated: January 10, 2018

Jeffrey Chubak
STORCH AMINI PC
140 East 45th Street, 25th Floor
New York, New York 10017
Tel: (212) 497-8247
Fax: (212) 490-4208
jchubak@storchamini.com

*Attorneys for Earl of Sandwich (Atlantic City),*
*LLC*

## TABLE OF CONTENTS

**Page**

SUMMARY OF ARGUMENT ............................................................................................ 1

BACKGROUND ........................................................................................................... 4

I.     RESPONDENTS' INVOLVEMENT IN UNDERLYING CONTESTED MATTER
       PRIOR TO ITS COMMENCEMENT ...................................................................... 4

II.    THE UNDERLYING CONTESTED MATTER ......................................................... 6

III.   RESPONDENTS' DISCOVERY RESPONSES AND OBJECTIONS ............................ 7

IV.    COWEN INSTRUCTS BARRETT MIKELBERG NOT TO PRODUCE HIS
       CONTRACT WITH COWEN ............................................................................... 11

ARGUMENT ............................................................................................................. 12

I.     RESPONDENTS SHOULD BE COMPELLED TO PRODUCE ALL DOCUMENTS
       THEY AGREED TO PRODUCE IN THEIR RESPONSES AND OBJECTIONS ........ 12

       A.     Respondents' Refusal to Produce Non-Confidential Documents Prior to the
              Close of Discovery and Before Their Scheduled Depositions is Indefensible ..... 12

       B.     Respondents Should be Compelled to Produce All Documents They
              Consider Confidential ............................................................................ 13

II.    COWEN SHOULD BE COMPELLED TO PRODUCE ITS CONTRACT WITH
       BARRETT MIKELBERG ................................................................................... 17

CONCLUSION ........................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Fed. of Musicians of the U.S. and Canada v. Skodam Films, LLC*,
  313 F.R.D. 39 (N.D. Tex. 2015) ................................................. 13

*Fischer v. Forrest*,
  No. 14-cv-1304, 2017 WL 773694 (S.D.N.Y. Feb. 28, 2017) ................................ 15, 16

*Gowan v. Westfrod Asset Mgmt. LLC (In re Dreier, LLP)*,
  485 B.R. 821 (Bankr. S.D.N.Y. 2013) ....................................... 17

*Kalis v. Colgate-Palmolive Co.*,
  231 F.3d 1049 (7th Cir. 2000) ................................................. 4

*Leibovitz v. City of New York*,
  No. 15-cv-546-LGS/HBP, 2017 WL 462515 (S.D.N.Y. Feb. 3, 2017) ........................... 13

*Liguria Foods, Inc. v. Griffith labs, Inc.*,
  320 F.R.D. 168 (N.D. Iowa 2017) ........................................... 15

*Mancia v. Mayflower Textile Servs. Co.*,
  253 F.R.D. 354 (D. Md. 2008) .............................................. 15

*Orix USA Corp. v. Armentrout*,
  No. 3:16-mc-63, 2016 WL 4095603 (N.D. Tex. Aug. 1, 2016) ................................. 13

*Sobol v. Imprimis Pharm.*,
  No. 16-cv-14339, 2017 WL 5035837 (E.D. Mich. Oct. 26, 2017) ............................. 16

*Togut v. Deutsche Bank AG (In re Anthracite Capital, Inc.)*,
  492 B.R. 162 (Bankr. S.D.N.Y. 2013) .................................. 10, 17

*Yaodi Hu v. Park Nat'l Bank*,
  333 Fed. App'x 87 (7th Cir. 2009) ....................................... 4

**Statutes**

11 U.S.C. § 107(b) ............................................... 2, 6, 9, 10, 17

28 U.S.C.  § 156(c) ......................................................... 6

**Rules**

Fed. R. Bankr. P. 3001 ........................................................................................... 5, 6

Fed. R. Bankr. P. 9018 .............................................................................. 2, 6, 9, 10, 17

Fed. R. Civ. P. 26 ................................................................................................... 6, 9

Fed. R. Civ. P. 34 ..................................................................................... 3, 13, 14, 15, 16

Fed. R. Civ. P. 37 ....................................................................................................... 1

Fed. R. Civ. P. 45 ....................................................................................................... 1

Ill. Local Bankr. R. 5005-4 ...................................................................................... 3, 10

Ill. Local Bankr. R. 1007-2 .......................................................................................... 6

Earl of Sandwich (Atlantic City), LLC ("Earl") submits this memorandum of law in support of its motion to compel Cowen Special Investments LLC ("Cowen") and Bradly Schwab ("Schwab," and together with Cowen, "Respondents") to produce documents they agreed to produce in their responses and objections to document subpoenas issued to them in connection with a contested matter pending in *In re Caesars Entm't Operating Co., Inc.,* Chapter 11 Case No. 15-01145-ABG (Bankr. N.D. Ill.), and Cowen's contract with Barrett Mikelberg, pursuant to Rule 37(a) and 45(d)(2)(B)(i).   Earl's Rule 37(a)(1) certification, and the exhibits cited herein, are included in the Declaration of Jeffrey Chubak, dated January 10, 2018 ("Chubak Decl.").

## SUMMARY OF ARGUMENT

The key issue in the underlying contested matter is whether Respondents' January 11-12, 2017 communications with Earl gave rise to mutual assent, and hence, a binding agreement under which Earl allegedly agreed to convey its $3.6 million claim filed in the *Caesars* chapter 11 cases to Cowen in exchange for $2.15 million.   Whitebox Advisors LLC ("Whitebox") asserts that an agreement exists, and it has the right to enforce the same under a separate agreement with Cowen, dated June 19, 2017, under which Cowen conveyed to Whitebox its right to sue Earl for breach of the alleged Earl-Cowen agreement in exchange for $1, a release, and a commitment to cooperate with Whitebox in subsequent litigation against Earl.   Earl disagrees with Whitebox on the fact question of mutual assent.[1]

Earl served document subpoenas on Respondents on November 22, 2017, and Respondents agreed to produce documents in response to the same.   Despite this, to date Respondents have not produced a single document.   Respondents advised Earl by e-mail, but not in their responses and objections to the subpoenas, that they were conditioning production of all documents, whether or

---

[1] Earl has asserted additional defenses which are not relevant to its motion.

not they qualify as confidential, on entry of a protective order by Bankruptcy Judge A. Benjamin Goldgar.  Earl entered into a stipulated protective order with Whitebox that would have permitted Respondents to designate documents as confidential, and Whitebox submitted the same to Judge Goldgar for entry.  At a hearing held January 3, 2018 in a separate discovery dispute relating to the underlying contested matter, however, Judge Goldgar stated he would not be entering the stipulated protective order, as he could not see how any documents involved in the contested matter would be in any way confidential, and invited the person seeking confidential treatment to file a motion explaining why such relief was appropriate.

Following the hearing, Earl asked Respondents to produce documents they agreed to produce in their responses and objections, as the January 15, 2018 discovery cutoff set two months prior was fast approaching and Earl was scheduled to take Respondents' depositions January 16 and 18, 2018 (the earliest dates available in January, according to Respondents).  Earl offered to stipulate not to disclose documents Respondents considered confidential pending a ruling on a motion for a protective order, which Whitebox advised Earl it would file, returnable January 17, 2018.  Respondents, however, refused that proposal.

At the parties' meet-and-confer, Respondents proposed producing documents they previously agreed to produce under cover of a confidentiality agreement (not a protective order), so documents produced would remain confidential even if Whitebox's motion for a protective order were denied.  Earl rejected this proposal. Earl wishes to use Respondents' documents in the underlying contested matter free of limitations in a confidentiality agreement.  A confidentiality agreement would limit Earl's ability to use documents produced by Respondents, as consent is not a basis for limiting public access to court filings in bankruptcy cases under Bankruptcy Code section 107(b) and Rule 9018.  Moreover, Northern District of Illinois Local Bankruptcy Rule

("Local Bankruptcy Rule") 5005-4 prohibits the filing of documents with redactions or under seal absent a prior court order.

By this motion, Earl seeks an order compelling production of all documents Respondents previously agreed to produce in their responses and objections, whether or not Respondents consider them confidential.  That universe of documents is limited to "non-privileged, responsive documents from Relevant Timeframe [defined as January 1, 2018 through February 28, 2017"] regarding contemplated transaction at issue." Respondents have no defense to their non-production of documents in that category which they do not consider confidential commercial information. With respect to documents they consider confidential, production should still be compelled as Respondents' responses and objections do not state they are withholding documents pending entry of a protective order (or confidentiality agreement), and do not comply with amended Rule 34 for other reasons as well.

Earl also seeks an order compelling Cowen's production of its agreement with Barrett Mikelberg ("Mikelberg"), a bankruptcy claim sourcer and independent contractor for Cowen, who testified, at his January 8, 2018 deposition, that he has a written agreement with Cowen under which he is entitled to 15% of Cowen's profit from any bankruptcy claim transaction introduced by him, and who also introduced Earl to Cowen.  Mickelberg advised Earl and Whitebox at his deposition that he would produce his agreement with Cowen, but after Earl asked for the same following Mikelberg's deposition, Mickelberg advised Earl that Cowen instructed him not to produce it.

Earl takes no joy in moving to compel.  However, it has little choice given that Respondents are key witnesses on the disputed fact question of mutual assent in the underlying contested matter, and their unwillingness to produce even non-confidential documents prior to the discovery cutoff or their scheduled depositions.  Failure to move under these circumstances would be construed as

3

evincing a "lack of diligence" on Earl's part.  *Yaodi Hu v. Park Nat'l Bank*, 333 Fed. App'x 87, 90 (7th Cir. 2009); *see also Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1058 n.5 (7th Cir. 2000) ("a party needing additional discovery is under an obligation to bring the issue before the court").

## BACKGROUND

### I.  RESPONDENTS' INVOLVEMENT IN UNDERLYING CONTESTED MATTER PRIOR TO ITS COMMENCEMENT

On September 1, 2016, Earl filed a $3.6 million proof of claim in the *Caesars* chapter 11 cases, assigned Claim No. 5858, amending Claim No. 5497 ("Claim").  On January 11-12, 2017, Thomas Avallone, Earl's Manager ("Avallone"), and Schwab, whose e-mail signature states he was "Managing Director [and] Head of Cowen Special Investments," exchanged e-mails concerning a potential sale of the Claim to Cowen.  (Chubak Decl. Ex. 1 ("Transfer of Claim"), Declaration of Bryan Seyfried (annexed thereto as Ex. 2) ("Seyfried Decl.") Ex. A.)

Unbeknownst to Earl, before Cowen even e-mailed a draft Claim transfer agreement to Earl to review, Cowen confirmed a sale of the Claim to Whitebox.  (Seyfried Decl. Ex. B.)  Earl did not respond to Cowen's subsequent e-mail transmitting the draft Claim transfer agreement, or to follow-up e-mails from Cowen, except to advise Cowen that Earl would not be selling the Claim to it, following receipt of a letter from Bryan Seyfried, the Head of Credit of Cowen's parent. (Seyfried Decl. Ex. A, Ex. C.)

On February 28, 2017, Danny Phillips, "Director, Legal" at Cowen's parent ("Phillips"), advised Whitebox that it "takes the failure of a party to stand up to a trade as a very serious matter and has therefore taken all reasonable actions to attempt to hold the seller to a good faith negotiation to complete the trade."  However, "upon review of the matter, we [Cowen] do not believe that any further action would be productive or is practical in this instance."  (Chubak Decl. Ex. 2, Ex. B.)

On April 18, 2017, Whitebox, through counsel, wrote to Phillips stating Cowen's failure to deliver the Claim to Whitebox could result in "significant damages" to Whitebox, as "in addition to not receiving the value for which it [Whitebox] bargained in the agreed trade, Whitebox considered the completion of this trade in developing a strategy around the Caesars bankruptcy case that included purchasing other, larger claims from you [Cowen]," and that Whitebox disagrees with Phillips' conclusion that no further action vis-à-vis Earl would be productive or practical. Whitebox further demanded that Cowen either file a transfer of claim pursuant to Rule 3001(e)(2),[2] or alternatively, "permit us to proceed on your behalf."  (Chubak Decl. Ex. 2.)

Cowen elected to permit Whitebox to proceed on its behalf.  Cowen and Whitebox entered into an Assignment and Release Agreement, dated June 19, 2017 ("A&R Agreement"), under which Cowen sold certain "Transferred Rights" to Whitebox, with the quoted term defined as "(a) any and all rights Seller [Cowen] may have to purchase the Rights [defined as the Claim and proceeds thereof] directly from the Claimholder [Earl] and (b) any and all … causes of action Seller has against the Claimholder arising out of or in connection with the Seller Transaction [defined as the alleged Earl-Cowen agreement]," in exchange for $1, a release, and a covenant to

---

[2] Rule 3001(e)(2) provides, in relevant part:

> If a claim … has been transferred … after the proof of claim has been filed, evidence of the transfer shall be filed by the transferee.  The clerk shall immediately notify the alleged transferor by mail of the filing of the evidence of transfer and that objection thereto, if any, must be filed within 21 days of the mailing of the notice or within any additional time allowed by the court.  If the alleged transferor files a timely objection and the court finds, after notice and a hearing that the claim has been transferred … it shall enter an order substituting the transferee for the transferor.  If a timely objection is not filed by the alleged transferor, the transferee shall be substituted for the transferor.

cooperate with Whitebox in connection with contemplated future litigation against Earl, namely, the contested matter.[3]

On July 10, 2017, Whitebox filed a motion for an order that "Whitebox is the lawful owner of the Claim [and] all rights related thereto by virtue of the Transaction between Earl and Cowen, and the subsequent execution of the Assignment and Release Agreement," and "authoriz[ing] and empower[ing Whitebox] to file a transfer notice and evidence of transfer with this Court with respect to the Claim," pursuant to Rule 3001(e)(2).  (Chubak Decl. Ex. 3.)   That motion was denied as premature by minute order, entered August 16, 2017, on the ground that Whitebox had not filed a transfer of claim, as contemplated by Rule 3001(e)(2).

On September 26, 2017, Whitebox filed a transfer of claim, pursuant to Rule 3001(e)(2). That filing, which is substantially identical to the Transfer of Claim at issue in the subject contested matter, was marked defective by Prime Clerk LLC, the Bankruptcy Court-appointed agent responsible for maintaining the claims register, pursuant to 28 U.S.C. § 156(c) and Local Bankruptcy Rule 1007-2, on the ground that it lacked the requisite evidence of the transfer. (Chubak Decl. Ex. 4 ("Objection"), Ex. 1.)

## II.  THE UNDERLYING CONTESTED MATTER

On October 5, 2017, Whitebox filed the subject Transfer of Claim.  Whitebox states in that filing "[o]n January 11-12, 2017, Cowen and Earl agreed to material terms of a claims trade whereby Earl committed to sell, convey and otherwise transfer the Claim to Cowen for $2.15

---

[3] Earl informally agreed to keep the A&R Agreement confidential pending entry of the stipulated protective order (discussed below), in consideration for Whitebox agreeing to produce documents it believed to include confidential commercial information under Bankruptcy Code section 107(b), and Rules 26(c)(1)(G) and 9018, prior to entry of the same.  Earl does not believe any part of the A&R Agreement constitutes confidential commercial information, but out of an abundance of caution has not filed it together with its moving papers. Earl reserves the right to file the agreement with its reply papers if Judge Goldgar denies Whitebox's motion for a protective order.

million," and annexes the e-mail traffic between Schwab and Avallone as evidence of the alleged transfer.  (Transfer of Claim Ex. 1; Seyfried Decl. Ex. A.)  The Transfer of Claim further states on January 12, 2017, Cowen confirmed the sale of the Claim to Whitebox, and Whitebox and Cowen later entered into the A&R Agreement under which "Cowen transferred any and all rights of Cowen with respect to the Claim" to Whitebox.  (Transfer of Claim Ex. 1; Seyfried Decl. Ex. B.)  Although the Transfer of Claim is nearly identical to that filed September 26, 2017, it was not marked defective by Prime Clerk LLC.  (Objection ¶2 n.1.)

On October 18, 2017, Earl filed its Objection to the Transfer of Claim, among other things, asserting mutual assent between Earl and Cowen is lacking, and seeking a discovery stay pending resolution of threshold issues identified therein.  (Objection ¶¶5, 7.)

At the hearing on the Objection, held November 15, 2017, Bankruptcy Judge Donald R. Cassling, presiding over the hearing instead of Judge Goldgar, denied the requested discovery stay and set a sixty-day discovery cutoff, ending January 15, 2018, and a January 17, 2018 status hearing.  (Chubak Decl. Ex. 5.)

## III.   RESPONDENTS' DISCOVERY RESPONSES AND OBJECTIONS

On November 17, 2017, Earl served its first set of requests for production on Whitebox.

On November 22, 2017, Earl served document subpoenas on Respondents.  (Chubak Decl. Ex. 6-7.)  Those subpoenas sought three categories of documents from Schwab, and six from Cowen.  Respondents served their respective responses and objections December 13, 2017. (Chubak Decl. Ex. 8-9.)  Both responses and objections assert fifteen general objections, followed by "Responses" to each of Earl's requests.

Respondents both agreed in their Responses to "produce [his/its] non-privileged, responsive documents from the Relevant Timeframe [a term defined as "January 1, 2017 through February 28, 2017"] regarding contemplated transaction at issue, to the extent any such documents

exist," "[s]ubject to and without waiving the foregoing objections and each of the General Objections." (Cowen Responses 1-2, 4; Schwab Responses 2-3.)

One "foregoing objection" is an objection to the request "to the extent that it seeks the production of confidential, proprietary information concerning [Cowen's/Schwab's] business activities and/or business operations, or the business activities of [his/its] clients/customers." The remaining "foregoing objections" are similar boilerplate (*e.g.*, Respondents object "on the grounds that it [the request] is vague, ambiguous, overbroad, unduly burdensome, and unreasonable in temporal scope"). In addition, both Respondents assert a General Objection (No. 5 in both) to Earl's requests "to the extent that it calls for the disclosure of … documents that relate to or contain proprietary or confidential, personal, private, or sensitive business information, trade secrets, competitively sensitive information, or private consumer financial information belonging to [Cowen/Schwab] and/or to [its/his] clients, or to the extent that [Cowen/Schwab] is prohibited from disclosing such information or documents pursuant to contract or applicable law."

The responses and objections were not accompanied by the production of any documents. Nor did Respondents state therein they were withholding documents pending entry of a protective order, or state when documents would be produced.

Respondents also advised Earl the earliest that it could depose Respondents under separate subpoenas was January 16 and 18, 2018, after the discovery cutoff, even though Schwab previously advised Earl he was available to sit for a pre-discovery cutoff deposition. (Chubak Decl. Ex. 10.)

Whitebox served its responses and objections on December 18, 2017, and asserted therein that it would not be producing any documents absent entry of a stipulated protective order, and annexed a proposed form of order. On December 21, 2017, Earl furnished its comments to Whitebox's proposed order, which comments were accepted, enabling the parties to agree to terms

of a stipulated protective order, which the parties subsequently signed.  (Chubak Decl. Ex. 11.)[4]
Whitebox also agreed to commence a rolling production of non-confidential documents, prior to
its and Earl's having agreed to terms of the stipulated protective order, and a rolling production of
confidential documents, on its and Earl's having signed the same, notwithstanding the stipulated
protective order's not yet having been so ordered by Judge Goldgar, provided Earl agreed to
maintain confidentiality of the documents pending entry of the same.

Cowen, however, refused to produce any documents to Earl, not even documents that do
not constitute confidential commercial information under section 107(b), or Rules 26(c)(1)(G) or
9018.  (Chubak Decl. Ex. 10.)

At the January 3, 2017 hearing on a discovery dispute with Prime Clerk LLC in connection
with the Earl-Whitebox contested matter, Judge Goldgar stated he would not be entering the
stipulated protective order Whitebox submitted, and directed the person seeking confidential
treatment to file a motion seeking said relief.  (Chubak Decl. Ex. 12, p.14, "It is hard for me,
frankly, to imagine that there would be good cause here [for a protective order].  I just can't see
how anything involved in this dispute would be in any way confidential … So I'd like this done
by motion," "explain[ing] why.")[5]

Earl advised Respondents as much on the hearing date.  On January 7, 2018, Earl e-mailed
Respondents stating:

---

[4] The stipulated protective order would have permitted parties (or non-parties) to designate discovery
material being produced as "Confidential," provided it "in good faith reasonably believes" that it
includes "confidential research, development, or commercial information, as that term is used in Rule
26(c)(1)(G), Rule 9018, and 11 U.S.C. § 107(b)."  In addition, it would have, among other things, permitted
the filing of discovery material bearing a Confidential designation under seal, and prohibit disclosure of
such material except to specified persons, so long as it is designated such.

[5] Judge Goldgar also stated the form of stipulated protective order was unacceptable, and he would require
that any order conform to the Northern District of Illinois's Model Confidentiality Order.

> Given that Judge Goldgar decided not to enter Whitebox's requested stipulated protective order, and insisted on a motion instead (returnable 1/17 at the earliest), and the scheduled depositions [of Respondents on January 16 and 18, 2018] and the looming discovery cutoff, your position on documents that do not include confidential commercial information is not reasonable.  Please let me know when you will be producing the same, or when you are available for a meet-and-confer.

(Chubak Decl. Ex. 10.)

Their sole response was "[w]e are not a party to this case.  We just want to preserve the confidentiality of our client's documents."  (*Id*.)

Whitebox advised Respondents that their refusal to produce documents was unacceptable, and requested a meet-and-confer.  (*Id*.)

The parties held their meet-and-confer on January 10, 2018 at 2:00 p.m. As noted above, at the meet-and-confer, Respondents proposed producing documents they previously agreed to produce under cover of a confidentiality agreement (not a protective order), so documents produced would remain confidential even if Whitebox's motion for a protective order were denied. Earl considered this problematic for several reasons.  Earl wishes to use Respondents' documents in the underlying contested matter free of limitations in a confidentiality agreement, as Respondents have no reasonable expectation of privacy given their roles in the contested matter. Perhaps more significantly, a confidentiality agreement would limit Earl's ability to use documents produced by Respondents in the contested matter, as consent is not a basis for limiting public access to court filings in bankruptcy cases under Bankruptcy Code section 107(b) and Rule 9018. *See generally Togut v. Deutsche Bank AG (In re Anthracite Capital, Inc.)*, 492 B.R. 162 (Bankr. S.D.N.Y. 2013).  Moreover, Local Bankruptcy Rule 5005-4 prohibits Earl from filing documents with redactions or under seal absent a prior court order, making a mere confidentiality agreement inadequate.  The parties were thus unable to achieve a resolution without court action.

10

## IV.   COWEN INSTRUCTS BARRETT MIKELBERG NOT TO PRODUCE HIS CONTRACT WITH COWEN

Earl was introduced to Schwab by Barrett Mikelberg, a professional bankruptcy claim sourcer ("Mikelberg").  (Seyfried Decl. Ex. A.)  Mikelberg testified at his deposition that although he is not a Cowen employee, he has a contract with Cowen under which he is entitled to receive, as compensation, 15% of Cowen's profit on any bankruptcy claim it purchases where the counterparty was introduced by Mikelberg.  (Chubak Decl. Ex. 13.)[6]  He also testified that he was not paid by Cowen under the contract, even though he introduced Avallone to Schwab (*id.*), and e-mailed Schwab about Cowen's nonpayment (Chubak Decl. Ex. 14).   Whitebox advised Mikelberg at his deposition that his contract with Cowen was responsive to Whitebox's document subpoena, previously served upon him. (Chubak Decl. Ex. 13; *id.* Ex. 15.)   Earl and Whitebox also asked Mikelberg to produce a copy of the contract following the deposition, and Mikelberg agreed.  (Chubak Decl. Ex. 13.)

Having not received the contract, Earl e-mailed Mikelberg the following day at 10:24 p.m., asking for a copy of the same.  (Chubak Decl. Ex. 16.)  Mikelberg e-mailed back the following morning, stating Cowen instructed him not to produce it.  (*Id.*, "as per Cowen, regarding a copy of my contract: Because there is proprietary information in there please request it from them directly").

---

[6] As the deposition took place two days prior to the filing of Earl's moving papers, only a rough draft of the transcript is presently available, an excerpt of which has been annexed to the Chubak Declaration.  Earl will file a final copy with its reply papers, if the same is made available prior to the due date for the same.

**ARGUMENT**

I.   **RESPONDENTS SHOULD BE COMPELLED TO PRODUCE ALL DOCUMENTS THEY AGREED TO PRODUCE IN THEIR RESPONSES AND OBJECTIONS**

   A.   **Respondents' Refusal to Produce Non-Confidential Documents Prior to the Close of Discovery and Before Their Scheduled Depositions is Indefensible**

Respondents have no justification for not producing documents which they agreed to produce in their responses and objections that are not confidential.  Their sole justification for nonproduction of said documents is that they are "not a party to this case." This excuse rings hollow, both because (a) Respondents entered into the A&R Agreement at Whitebox's request (Chubak Decl. Ex. 2) for the express purpose of giving Whitebox the right to sue Earl under the alleged Earl-Cowen agreement, in exchange for $1, a release, and a commitment to cooperate with Whitebox in this litigation (Schwab is listed as Cowen's contact person on the first page of the agreement, and Respondents' counsel herein is listed as notice party for Cowen in the agreement); and (b) Respondents are the key witnesses on the question of mutual assent.  Indeed, it is unclear why Respondents had any expectation of privacy, given their conscious decision to enter into the agreement which serves as the launch pad for Whitebox to commence the underlying contested matter.

Respondents' unwillingness to produce even non-confidential documents it already agreed to produce, prior to the discovery cutoff and Respondents' depositions, is part of a pattern of delaying discovery in the underlying contested matter, which they have successfully done from and after service of Earl's subpoenas. (Chubak Decl. Ex. 10.)  Their conduct is also consistent with Respondents' obligations to cooperate with Whitebox in its prosecution of the contested matter with Earl.

Although, at this stage, Earl is going to be forced to commence Respondents' depositions without the benefit of production of Respondents' documents, including non-confidential documents, Earl cannot move to compel production of the same following the close of discovery should Respondents elect to again default on their agreement to produce documents, and needs those documents for any eventual evidentiary hearing.  Earl therefore has little choice but to move to compel now.

**B.     Respondents Should be Compelled to Produce All Documents They Consider Confidential**

Respondents have taken the position even if they are required to produce non-confidential documents, they should not be directed to produce documents they believe are confidential, even if Whitebox's motion for a protective order is denied.  That argument fails.  Respondents have no right to withhold the production of documents on confidentiality grounds, as their responses and objections on confidentiality grounds do not comport with Rule 34, resulting in waiver of any confidentiality objection.

It is well established standards in Rule 34 govern responses and objections to document subpoenas.  *See*, *e.g.*, *Orix USA Corp. v. Armentrout*, No. 3:16-mc-63, 2016 WL 4095603, at *2 (N.D. Tex. Aug. 1, 2016) (citing *Am. Fed. of Musicians of the U.S. and Canada v. Skodam Films, LLC*, 313 F.R.D. 39, 46 (N.D. Tex. 2015)) ("general or boiler-plate objections" are prohibited in responding to document subpoena, under Rule 34), cited approvingly in *Leibovitz v. City of New York*, No. 15-cv-546-LGS/HBP, 2017 WL 462515, at *3 (S.D.N.Y. Feb. 3, 2017).

Rule 34(b)(2)(B)-(C), as amended in 2015, states as follows (added language underlined):

> (B) *Responding to Each Item*.  For each item or category, the response must either state that inspection and related activities will be permitted as requested or state <u>with specificity the grounds for objecting</u> to the request, including the reasons.  <u>The responding party may state that it will produce copies of documents or of electronically stored information instead of permitting inspection.</u>

The production must then be completed no later than the time for inspection specified in the request or another reasonable time specified in the response.

(C) *Objections*.  An objection must state whether any responsive materials are being withheld on the basis of that objection.  An objection to part of a request must specify the part and permit inspection of the rest.

The Advisory Committee Notes emphasize the reasons for the amendment:

Rule 34(b)(2)(B) is amended to require that objections to Rule 34 requests be stated with specificity. This provision adopts the language of Rule 33(b)(4), eliminating any doubt that less specific objections might be suitable under Rule 34.  The specificity of the objection ties to the new provision in Rule 34(b)(2)(C) directing that an objection must state whether any responsive materials are being withheld on the basis of that objection.  An objection may state that a request is overboard, but if the objection recognizes that some part of the request is appropriate the objection should state the scope that is not overbroad.   Examples would be a statement that the responding party will limit the search to documents or electronically stored information created within a given period of time prior to the events in suit, or to specified sources. When there is such an objection, the statement of what has been withheld can properly identify as matters "withheld" anything beyond the scope of the search specified in the objection.

Rule 34(b)(2)(B) is further amended to reflect the common practice of producing copies of documents or electronically stored information rather than simply permitting inspection.  The response to the request must state that copies will be produced.  The production must be completed either by the time for inspection specified in the request or by another reasonable time specifically identified in the response. When it is necessary to make the production in stages the response should specify the beginning and end dates of the production.

Rule 34(b)(2)(C) is amended to provide that an objection to a Rule 34 request must state whether anything is being withheld on the basis of the objection. This amendment should end the confusion that frequently arises when a producing party states several objections and still produces information, leaving the requesting party uncertain whether any relevant and responsive information has been withheld on the basis of the objections. The producing party does not need to provide a detailed description or log of all documents withheld, but does need to alert other parties to the fact

14

that documents have been withheld and thereby facilitate an informed discussion of the objection. An objection that states the limits that have controlled the search for responsive and relevant materials qualifies as a statement that the materials have been "withheld."

(Emphasis added.)

In a widely publicized decision, calling for a "wake-up call to the Bar in this district," Magistrate Judge Andrew J. Peck recently criticized parties for engaging in the exact same conduct as Respondents have:

Let us count the ways defendants have violated the Rules:

First, incorporating all of the General Objections into each response violates Rule 34(b)(2)(B)'s specificity requirement as well as Rule 34(b)(2)(C)'s requirement to indicate whether any responsive materials are withheld on the basis of an objection. General objections should rarely be used after December 1, 2015 unless each such objection applies to each document request (e.g., objecting to produce privileged material) …

Third, the responses … stating that the requests are "overly broad and unduly burdensome" is meaningless boilerplate. Why is it burdensome? How is it overly broad? This language tells the Court nothing. Indeed, even before the December 1, 2015 rules amendments, judicial decisions criticized such boilerplate objections. See, e.g., Mancia v. Mayflower Textile Servs. Co., 253 F.R.D. 354, 358 (D. Md. 2008) (Grimm, M.J.) ("[B]oilerplate objections that a request for discovery is 'over[broad] and unduly burdensome, and not reasonably calculated to lead to the discovery of material admissible in evidence,' persist despite a litany of decisions from courts, including this one, that such objections are improper unless based on particularized facts" …)

Finally, the responses do not indicate when documents and ESI that defendants are producing will be produced.

Fischer v. Forrest, No. 14-cv-1304, 2017 WL 773694, at *3 (S.D.N.Y. Feb. 28, 2017). See also Liguria Foods, Inc. v. Griffith labs, Inc., 320 F.R.D. 168, 192 (N.D. Iowa 2017) ("NO MORE WARNINGS. IN THE FUTURE, USING 'BOILERPLATE' OBJECTIONS TO DISCOVERY IN ANY CASE BEFORE ME PLACES COUNSEL AND THEIR CLIENTS AT RISK FOR

SUBSTANTIAL SANCTIONS"); *Sobol v. Imprimis Pharm.*, No. 16-cv-14339, 2017 WL 5035837, at *4 (E.D. Mich. Oct. 26, 2017) ("In fact, boilerplate objections are legally meaningless and amount to a waiver of an objection").

Respondents' responses and objections are defective for the same reasons as those in *Fischer*. No indication is made therein that any documents are being withheld on the basis of an objection, notwithstanding the litany of "to the extent" general objections preceding the Responses, as well as a "to the extent" confidentiality objection included in each Response. Indeed, because their responses and objections make no mention of a protective order, Earl did not find out Respondents had no intention of producing documents prior to entry of the same until well after receipt of their responses and objections. (Chubak Decl. Ex. 10.) And when Earl asked Respondents to produce, at a minimum, documents they did not consider confidential, Earl's request was denied. (*Id*.)

The responses and objections likewise do not state when documents will be produced. Even had the responses and objections specified "after entry of a protective order" as the time for compliance, that time would not be considered reasonable, given Judge Goldgar's having declined to enter Whitebox's and Earl's stipulated protective order at the January 3, 2018, his comments on the same, the looming discovery cutoff, and Respondents' depositions scheduled for January 16 and 18, 2018.

In *Fischer*, Judge Peck warned "From now on in cases before this Court, any discovery response that does not comply with Rule 34's requirement to state objections with specificity (and to clearly indicate whether responsive material is being withheld on the basis of objection) will be deemed a waiver of all objections (except as to privilege)." 2017 WL 773694, at *3. Defects in Respondents' responses and objections should likewise, at a minimum, result in their

deemed waiver of all objections as to documents they have agreed to produce, including objections

on confidentiality grounds.

## II.     COWEN SHOULD BE COMPELLED TO PRODUCE ITS CONTRACT WITH BARRETT MIKELBERG

The terms of Mikelberg's contract with Cowen are highly relevant to the disputed fact

question of mutual assent, given his testimony that he has not been paid to date under the contract

and that it is undisputed Mikelberg introduced Earl to Respondents.  Mikelberg advised Earl that

Cowen told him not to produce the contract, even though Mikelberg agreed to produce the same

at his deposition.  (Chubak Decl. Ex. 13; *id.* Ex. 16.)  Cowen should be directed to produce that

contract.  Even if the agreement had a confidentiality clause (it is not clear if it does), that would

not serve as a basis for nondisclosure, or for confidential treatment of the agreement in the

contested matter, under section 107(b) or Rule 9018.  *See generally Anthracite Capital*, 492 B.R.

at 162 ("'Parties have consensually agreed to a seal' and 'unless otherwise ordered by the Court'

are also not enumerated exceptions [to the general right of public access] under § 107(b)"); *see*

*also Gowan v. Westfrod Asset Mgmt. LLC (In re Dreier, LLP)*, 485 B.R. 821, 822-23 (Bankr.

S.D.N.Y. 2013) ("The 'commercial information' exception [in section 107(b) and Rule 9018] is

not intended to offer a safe harbor for those who crave privacy or secrecy for its own sake.  Instead,

it protects parties from the release of information that could cause them harm or give competitors

an unfair advantage").

## **CONCLUSION**

Earl requests an order compelling Respondents to produce the documents they agreed to produce in their responses and objections and Cowen's contract with Mikelberg, and granting such other and further relief as this Court deems just and proper.

Dated: January 10, 2018                                   STORCH AMINI PC

                                                                         /s/ Jeffrey Chubak
                                                                         Jeffrey Chubak
                                                                         140 East 45th Street, 25th Floor
                                                                         New York, New York 10017
                                                                         Tel: (212) 497-8247
                                                                         Fax: (212) 490-4208
                                                                         jchubak@storchamini.com

                                                                         *Attorneys for Earl of Sandwich (Atlantic City), LLC*

18