# Exhibit 12

```
 1            IN THE UNITED STATES BANKRUPTCY COURT
              FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                         EASTERN DIVISION

 3


 4   CAESARS ENTERTAINMENT OPERATING )
     COMPANY, INC., et al.,          )   No. 15 B 01145
 5                                   )   Chicago, Illinois
                                     )   9:30 a.m.
 6                         Debtor.   )   January 3, 2018

 7


 8            TRANSCRIPT OF PROCEEDINGS BEFORE THE
                 HONORABLE A. BENJAMIN GOLDGAR
 9


10


11   APPEARANCES:

12   For the Debtors:           Mr. Scott Lerner;

13   For the Earl of Sandwich:  Mr. Joseph Frank;

14

15

16

17

18

19

20

21   Court Reporter:            Amy Doolin, CSR, RPR
                                U.S. Courthouse
22                              219 South Dearborn
                                Room 661
23                              Chicago, IL  60604.

24

25
```

1              THE CLERK:  Caesars Entertainment
2  Operating Company, Incorporated.  Debtors' motion for
3  protective order.
4              MR. LERNER:  Good morning, Your Honor.
5  Scott Lerner, Kirkland & Ellis, for the reorganized
6  debtors and for Prime Clerk.
7              THE COURT:  It's really Prime Clerk's
8  motion, it seems to me, because the discovery doesn't
9  seek anything from the debtors.
10             I've read the motion and the objection
11 to the motion.  In the main, I am sympathetic, quite
12 sympathetic, to the motion, and I think the
13 objections proceed from a misconception about what
14 Prime Clerk's role was or at least should have been
15 here.
16             I mean, the rule is very clear in
17 stating what the clerk is supposed to do.  When
18 there's a transfer, evidence of the transfer should
19 be filed by the transferee.  "The clerk shall
20 immediately notify the alleged transferor by mail of
21 the filing of the evidence of transfer, and that an
22 objection thereto, if any, must be filed within 21
23 days."  And then that's it as far as the clerk is
24 concerned.
25             "If the alleged transferor," the rule

1  continues, "files a timely objection, and the court
2  finds after notice and a hearing that the claim has
3  been transferred other than for security, it shall
4  enter an order substituting the transferee for the
5  transferor."
6            So, in other words, it is not the
7  clerk's job and it was not Prime Clerk's job to make
8  any sort of judgment at all about the facial validity
9  or indeed any sort of validity of the transferred
10 claim.  What Prime Clerk thought it was doing here in
11 filing a notice of defective transfer, I don't know.
12 There is no such document.
13           This is not the first time Prime Clerk
14 has been a problem in this case.  And I have to say,
15 I have gone back and looked at the retention motion
16 and the compensation arrangement to see if there's
17 something I can do to Prime Clerk because this was
18 just -- this was a terrible thing that they did here.
19           But that notice of defective transfer
20 is completely irrelevant to the dispute.  And because
21 it is, and because Prime Clerk was not in a position
22 to make any kind of judgments of any kind, discovery
23 into the policies and so on that Prime Clerk uses to
24 make judgments that the rule does not entitle it to
25 make anyway is just out of bounds.

1           Now, that said, I think some of the
2  discovery is appropriate here.  So when you look at
3  the three subpoenas, on the first one, which is the
4  document subpoena, the first item about practices,
5  policies, procedures or guidelines that Prime Clerk
6  uses in evaluating a transfer of claim, if they have
7  such practices and policies, they shouldn't have them
8  because they don't evaluate transfers.  The rule
9  doesn't call for them to.
10           Clerks of court are record keepers.
11  Clerks of court don't make judgments about things.
12  Our clerk, if he were here, would be nodding
13  enthusiastically that that is the case.  They don't
14  like to make judgments about things.  If you ask them
15  to, they start to quiver.  So Prime Clerk should have
16  been quivering and shouldn't have been filing
17  nonexistent documents.
18           But when you look at the other two
19  requests in the document requests, there are
20  arguments why some of these documents are relevant.
21  The second category is all documents concerning the
22  transfer of claim that was filed on September 26,
23  including all communications concerning the defective
24  transfer notice.
25           Now, even though there's no such thing

1   as a defective transfer notice, and even though
2   policies and practices and so on are out of bounds,
3   there still could have been communications between
4   Prime Clerk and Whitebox or somebody else that might
5   actually be relevant to the question of whether there
6   was indeed a transfer.  I don't know what was said.
7   And so somebody may have said something damning here
8   that would be useful or maybe wasn't damning.  So, as
9   long as we're not getting into documents that would
10  fall under category number 1, I think documents in
11  category number 2 are discoverable.
12              And the same with category number 3,
13  which has to do with this transfer filed on
14  October 5, although I really don't think that one is
15  going to be relevant because that was filed in
16  response to the notice of defective transfer.
17              So, I will grant the motion and
18  prohibit discovery as to category 1 with the document
19  subpoena, but I will deny the motion as to 2 and 3.
20              The second subpoena of the three is a
21  subpoena that calls for Ms. Weiner's deposition.  I
22  assume she's Prime Clerk's in-house lawyer, one of
23  them anyway, since there seem to be lots of lawyers
24  involved in this outfit.  And I suppose you can take
25  her deposition as long as you are not examining her

1  on policies and practices that have nothing to do
2  with anything.  Again, that's just completely
3  irrelevant.  She should not be asked about those
4  practices.  She should not be asked about this notice
5  of defective transfer.  It shouldn't have been filed.
6  But if there are conversations that she had with
7  people at Whitebox or even Cowen, for that matter,
8  although Cowen seems to have vanished from the scene,
9  I think that those can be gotten into.  So, again, I
10 would grant the motion in part and deny it in part,
11 making clear the line that I'm drawing.
12             The 30(b)(6) deposition subpoena I
13 have a lot of reservations about, frankly, because
14 none of the deposition topics seem to me to be
15 pertinent to the dispute.  The first one has to do
16 once again with the practices, policies, procedures
17 and so on that Prime Clerk uses in evaluating whether
18 a transfer is -- in evaluating a transfer of claim.
19 Well, they don't do that or if they are doing it,
20 they shouldn't be.
21             Then 2 is Prime Clerk's determination
22 that the transfer was defective.  That determination
23 is irrelevant, completely irrelevant.  I'm going to
24 make that determination.  The clerk doesn't make that
25 determination.  Same with number 3, the determination

1 about the second transfer of claim that was filed.
2 　　　　　　The fourth category, the closure of
3 the claims register, is what it is.  I mean, I don't
4 know what could be asked about that.  The plan said
5 what it says, and I don't think there's anything to
6 discuss.  And then the fifth category, the claims
7 themselves that Earl filed, we're not really
8 interested in the claims.  What we're talking about
9 is the transfer of the claims.
10 　　　　　　So I don't see that any category, any
11 topic listed in the Rule 30(b)(6) deposition notice,
12 is one that is in any way pertinent here, and
13 therefore necessarily the discovery would be
14 disproportionate.  I don't see how discovery could
15 ever be proportionate if it goes to issues that just
16 have nothing to do with the dispute.
17 　　　　　　The dispute here is very narrow.  It
18 has to do with whether the transfer was effective or
19 not.  And one of these days we'll get to that.  But
20 discovery from Prime Clerk I don't think as a rule is
21 going to get you where you want to go.  So, I would
22 be inclined to quash the 30(b)(6) subpoena in its
23 entirety.  I just don't think there's anything to be
24 asked.  You're going to get some documents
25 presumably, if there are documents to be gotten,

1  you're going to be able to ask Ms. Weiner a few
2  questions anyway, and it could be that she'd be an
3  adequate representative of Prime Clerk.  I don't
4  know, but you have not identified a deposition topic
5  that is relevant.
6              MR. FRANK:  Your Honor, may I be heard
7  for just a moment?
8              THE COURT:  If you like.
9              MR. FRANK:  I do like.  And what I
10 want to raise with the court -- I'm relatively new to
11 this matter.  I came in after Judge Cassling set the
12 discovery schedule.  And when Earl of Sandwich --
13 sorry, Joseph Frank on behalf of Earl of Sandwich.  I
14 don't think I even appeared.
15             When they called me, the first thing I
16 did, and I can't help it, Your Honor, is I went back
17 and skimmed Federalpha, which is a case I had in
18 front of this court, and thought about jurisdiction.
19 And I really would urge this court to take advantage
20 of its ability to examine its own jurisdiction at any
21 time because, Your Honor, when I read everything
22 that's in front of this court, it's a breach of
23 contract dispute.  It's not --
24             THE COURT:  Well, no, it's not.  It's
25 not.  It's a dispute -- it is at bottom, but the

1 contract dispute has to do with whether there was an
2 effective transfer or not. Okay. And so that is
3 core. It's "arising in" under the definition in the
4 Wood case.
5         MR. FRANK: Well --
6         THE COURT: If it's not, then what
7 you're suggesting is that the rule is
8 unconstitutional. And if you're going to do that,
9 we're going to go somewhere else with this.
10         MR. FRANK: Well, I'm not suggesting
11 the rule is unconstitutional.
12         THE COURT: Well, you are, actually.
13         MR. FRANK: Well, it's an interesting
14 issue, and I think it perhaps is, but I'm not making
15 that argument today. The argument I want to make,
16 Your Honor, is that you cannot create jurisdiction
17 simply by sending in a transfer of claim over a
18 breach of contract action. And, Your Honor, funds
19 never changed hands. That's the bottom line.
20         THE COURT: Well, then there wasn't an
21 effective transfer supposedly. But the question
22 whether there was one, that's the matter that I have
23 to decide. The rule says that I am to decide it.
24 Now, rules don't create jurisdiction, but this is a
25 matter, an administrative matter, that can only arise

10

1  in a bankruptcy case.  This involves claims in a
2  bankruptcy case.  That is as core as it gets.  And
3  this has to do with the transfer of that claim.
4              At bottom, any transfer of a claim is
5  going to involve some kind of agreement, and the
6  question here is whether there was an agreement to
7  transfer this claim or not.  But that arises in a
8  bankruptcy case.  You're not going to find this
9  dispute pending anywhere else.
10             MR. FRANK:  Well --
11             THE COURT:  That's why it's core and
12 that's why I have jurisdiction.
13             MR. FRANK:  Well, Your Honor, it's two
14 non-debtor parties disputing post confirmation with
15 no impact on the estate.  That's the Federalpha
16 ruling and that's what this is.  And, Your Honor, you
17 just said it, whether or not there was an --
18             THE COURT:  But --
19             MR. FRANK:  -- whether or not there
20 was a --
21             THE COURT:  We're talking about --
22             MR. FRANK:  -- contract to transfer
23 the claim.  There is no question the claim didn't
24 transfer and signing a piece of paper saying a claim
25 transferred doesn't create jurisdiction.

1                THE COURT:  Well, now you're assuming
2    that you've won, and you haven't yet.  I mean, the
3    question is whether there was an effective transfer.
4    That's what I have to decide.  What you're talking
5    about when you're talking about non-debtor parties
6    and the effect on the bankruptcy estate is whether
7    something is even "related to."
8                We're not talking about related to
9    jurisdiction.  This isn't a "related to" matter.
10   This is an "arising in" matter because it's an
11   administrative matter that can only arise in a
12   bankruptcy case.  That state law contract principles
13   may govern the outcome on that issue is neither here
14   nor there.  I mean, claims matters almost always,
15   maybe even always, involve underlying non-bankruptcy
16   law.  This one is no different.
17               MR. FRANK:  Well, listen, I hear the
18   court and I respect the court and your ruling is
19   clear.  One thing I'll say is I believe when the
20   court has heard the evidence, what the court -- and
21   it's evidence that's already in the pleadings -- what
22   the court is going to say is I can't determine this
23   matter because it's really a breach of contract
24   matter.  It's not a claim --
25               THE COURT:  I think I won't, but

1 you're always free to raise that objection.  If you
2 do -- there's an argument that you don't have to do
3 this -- it seems to me that Rule 5.1 of the civil
4 rules would require you to give notice to the United
5 States that you are drawing into question the
6 constitutionality of a bankruptcy rule.  Now, Rule
7 5.1 talks about statutes.  I don't know that this is
8 a statute.  But I'm going to require you to notify
9 the attorney general if you're going to raise a
10 jurisdictional argument that it seems to me draws
11 into question the constitutionality of 3002(e)(2).
12             MR. FRANK:  Well --
13             THE COURT:  But we're sort of getting
14 ahead of ourselves.
15             MR. FRANK:  Yeah, we are.  We are.
16             So, Your Honor, I appreciate your
17 ruling on the motion for protective order.  And, you
18 know, just so Your Honor is clear, we did submit a
19 protective order motion, or rather, Whitebox did, to
20 the court.  I don't know whether that's been entered.
21             THE COURT:  Well, I'll get to that in
22 a second.  So what I'd like to do then, consistent
23 with the ruling that I made today on the motion for
24 protective order, is get an order from you that you
25 can draw up that's consistent with my ruling which

1  would be granting the motion in part and denying it
2  in part and describing what's permitted and what's
3  not permitted.
4              MR. LERNER:  If I may, Your Honor.
5              THE COURT:  Yes.
6              MR. LERNER:  The discovery here that
7  you permitted I think still is of marginal relevance.
8  And it seems to me that one way to proceed would be
9  to have discovery from Whitebox occur first, and then
10 if further discovery from Prime Clerk as to the
11 communications between Prime Clerk and Whitebox is
12 deemed insufficient, then we can go back and look for
13 communications to and from Whitebox.  But these are
14 documents that Whitebox should have in its
15 possession.  Whitebox is a party to the dispute.
16 Prime Clerk is a third party.
17             We certainly can provide documents if
18 there's some indicia that they're not complete or
19 that there is something to be gained here, but I
20 still view this discovery as awfully tangential to
21 the narrow issue in this case.
22             THE COURT:  Not anymore, not now that
23 I've narrowed it.  And I don't think it's
24 particularly burdensome.  And I am not feeling real
25 kindly toward Prime Clerk these days anyway.  So,

1   even though I think I have the ability to order
2   discovery in the way you suggest, I don't usually do
3   that, and I don't see that any efficiencies are
4   really to be gained.  So, I will decline your
5   invitation.
6              MR. LERNER:  Okay.
7              THE COURT:  And you can go ahead.
8              Now, I was provided with a proposed
9   stipulation and order.  It's a protective order.
10  This is a separate protective order matter between I
11  guess it's Whitebox and Earl of Sandwich.  And what
12  I'm going to insist on since the proposed order -- I
13  have a couple problems with the proposed order.
14             The first is it says "good cause
15  appearing."  Well, I don't see any good cause.  And
16  if you're going to have me make a finding that
17  there's good cause, then I'm going to need a motion
18  that suggests there's good cause.  I'm not as a rule
19  a fan of protective orders.  It is hard for me,
20  frankly, to imagine that there would be good cause
21  here.  I just can't see how anything involved in this
22  dispute would be in any way confidential.  But you
23  can explain why.  Okay?
24             So I'd like this done by motion,
25  please.  I realize you're running up against sort of

1  a discovery cutoff, but we can deal with that.  I
2  don't mind extending that.
3            And then the other thing is (and I
4  can't really tell if you tried to do this or not, it
5  looks like you might have) the protective order has
6  to conform, to the extent you can, to the district
7  court's model confidentiality order.  And to the
8  extent you vary from the form, you have to provide me
9  with a red-line that shows me how you varied it.
10 Okay?  So, that should all be submitted with your
11 motion.
12           So I'm not going to do anything with
13 the proposed order you've supplied me, and I'll just
14 await your motion and I'll deal with it then.  And
15 we'll treat the motion up today as draft order to
16 follow.  And I'll take a look at your order and you
17 can talk --
18           MR. LERNER:  Thank you, Your Honor.
19           MR. FRANK:  Thank you, Your Honor.
20           THE COURT:  All right.  Thanks.
21           And I'm not precluding you from making
22 your jurisdictional argument.  I'm just suggesting
23 that I've thought about it and I'm dubious, but it
24 doesn't mean you're not necessarily right.
25           MR. FRANK:  Well, I may --

Case 1:18-mc-00014-RJS   Document 3-12   Filed 01/10/18   Page 17 of 17

16

```
 1                 THE COURT:  You can raise it in due
 2   course.
 3                 MR. FRANK:  We're making two different
 4   jurisdictional arguments, but --
 5                 THE COURT:  Well --
 6                 MR. FRANK:  -- the one you're
 7   suggesting, the one Your Honor is suggesting I also
 8   understand, and it's intriguing.  I'm not sure it's
 9   the hill we want to die on in this case, but I'll
10   talk to my client about it.
11                 THE COURT:  Well, I'll let you decide
12   where to die.
13                 MR. FRANK:  Thank you, Your Honor.
14                 (Which were all the proceedings had in
15                 the above-entitled cause, January 3,
16                 2018, 9:30 a.m.)
17   I, AMY B. DOOLIN, CSR, RPR, DO HEREBY CERTIFY
     THAT THE FOREGOING IS A TRUE AND ACCURATE
18   TRANSCRIPT OF PROCEEDINGS HAD IN THE ABOVE-
     ENTITLED CAUSE.
19
20
21
22
23
24
25
```